Filed 9/20/24  P. v. Gray CA2/1
Review denied 7/16/25; reposted with Supreme Court order and statement
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B330525 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A365859) |
| v. | |
| DERRICK ELLIOT GRAY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Petitioner Derrick Elliot Gray appeals from an order denying his Penal Code section 1172.6 petition.[1]  He argues the felony murder special circumstance instruction "given at Gray's trial did not prove beyond a reasonable doubt that the jury found Gray intended to kill."  Gray further contends the jury could have concluded he intended only to commit robbery and burglary, not murder.  Following *People v. Warren* (1988) 45 Cal.3d 471 (*Warren*), which held that no reasonable jury would adopt the interpretation of the instruction Gray espouses, we reject his arguments and affirm the resentencing court's order.[2]

## BACKGROUND[3]

### 1.  *Record of conviction and procedural history*

The People alleged that in 1981, Gray murdered George Latronis.  The People further alleged the murder was committed while Gray was engaged in a burglary and robbery within the meaning of the felony murder special circumstance.  The People alleged Gray committed a burglary and robbery.  Gray was tried separately from his confederate Alvin Bobo.  A jury convicted Gray of burglary, robbery, and the first degree murder of George Latronis.  (*People v. Bobo et al.* (Oct. 4, 1983, 2 Crim. No. 42179) at p. 2 (*Gray I*).)  The jury found true the alleged felony murder

---

[1]  Undesignated statutory citations are to the Penal Code.

[2]  We refer to the original sentencing court as the trial court and the court that considered Gray's resentencing petition as the resentencing court.

[3]  We summarize only those facts relevant to the issue on appeal.  The transcript of Gray's trial is not available and is not relevant to our resolution of this appeal.

special circumstance that the murder was committed during the course of the robbery and burglary.[4]  (*Gray I, supra,* 2 Crim. No. 42179 at p. 2.)

The felony murder special circumstance instruction included the following language, the meaning of which the parties dispute:  "If defendant, Derrick Gray, was not the actual killer, it must be proved beyond a reasonable doubt that he intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in the commission of the murder in the first degree . . . ."  The trial court further instructed the jury that it could find the special circumstance true only if "the proved facts not only are consistent with the theory that the defendant had the required mental state but cannot be reconciled with any other rational conclusion."

The only theory of first degree murder on which the jury was instructed was first degree felony murder, that is where the murder was "intentional, unintentional or accidental, which occurs as a result of the commission of or attempt to commit the crime of burglary or robbery, and where there was in the mind of the perpetrator the specific intent to commit such crime . . . ."  The trial court further instructed the jury on felony murder:  "If a human being is killed by any one of several persons engaged in the perpetration of, or attempt to perpetrate, the crime of burglary or robbery, all persons who either directly and actively commit the act constituting such crime or who with knowledge of

---

[4]  In 1990, Proposition 115 extended the felony-murder special-circumstance liability to major participants who acted with reckless indifference to human life.  (*People v. Strong* (2022) 13 Cal.5th 698, 705 (*Strong*).)  Gray was tried before this extension of felony murder.

the unlawful purpose of the perpetrator of the crime, aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional, or accidental."

Following conviction, Gray filed a motion to strike the special circumstance. The trial court denied the motion, finding the following factors in aggravation: (1) the crime involved great violence; (2) the crime involved a high degree of cruelty, viciousness, and callousness, (3) because of his age, the victim was particularly vulnerable; (4) Gray was on probation when he committed the crime; and (5) Gray's crimes were of increasing seriousness. (*Gray I*, *supra*, 2 Crim. No. 42179 at p. 16.)

In 1982, the trial court sentenced Gray to life without the possibility of parole for the murder. (*Gray I*, *supra*, 2 Crim. No. 42179 at p. 2.) Gray appealed from the judgment and this court modified Gray's sentence to stay the sentences on the burglary and robbery pending service of the sentence on murder. (*Id.* at p. 19.) As modified, we affirmed the judgment. (*Ibid*.)

## 2.    *Gray petitions for resentencing and the resentencing court denies his petition*

On September 17, 2021, Gray petitioned for resentencing pursuant to section 1172.6. The resentencing court appointed counsel for Gray and issued an order to show cause. No witness testified at the order to show cause hearing. The People could not locate the transcript of Gray's trial and for that reason, conceded Gray should be resentenced. The resentencing court rejected the People's concession. Relying on the special circumstance instruction, the resentencing court found beyond a reasonable doubt that Gray was guilty of murder because either he was the actual killer or given the instruction on the felony

4

murder special circumstance, the jury had to have found he had the intent to kill when he committed the felony murder. Gray timely appealed.

## DISCUSSION

"In Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), the Legislature significantly narrowed the scope of the felony-murder rule. It also created a path to relief for defendants who had previously been convicted of murder on a felony-murder theory but who could not have been convicted under the new law. Resentencing is available under the new law if the defendant neither killed nor intended to kill and was not 'a major participant in the underlying felony [who] acted with reckless indifference to human life . . . .' [Citations.]" (*Strong, supra,* 13 Cal.5th at p. 703, citing Pen. Code, § 189, subd. (e)(3); see Pen. Code, § 1172.6; Stats. 2018, ch. 1015, §§ 3–4; Stats. 2022, ch. 58, § 10.) *People v. Curiel* (2023) 15 Cal.5th 433 held that a criminal defendant who petitions for resentencing under section 1172.6 puts at issue all elements of murder. (*Curiel*, at p. 462.)

Respondent argues the jury found all elements of felony murder as it is currently defined under section 189, subdivision (e)(2), which provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [including robbery and burglary] in which a death occurs is liable for murder" if the "person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." (§ 189, subd. (e)(2); see also *Strong, supra,* 13 Cal.5th at p. 708 [current felony murder includes person with the intent to kill aids and

5

abets the actual killer in the commission of murder in the first degree].)

Gray disputes only the element of intent to kill.[5]  He argues the resentencing court erred in concluding beyond a reasonable doubt he harbored intent to kill.  According to Gray, under the special circumstance instruction given at his trial, the jury could have concluded he intentionally aided and abetted a robbery and burglary, not a murder.  He emphasizes that "other instructions explained that [the] actual killer could commit first degree murder by merely participating in an underlying robbery or burglary and without intending to kill."  (Italics omitted.)

*Warren*, *supra*, 45 Cal.3d 471 considered the same issue and rejected Gray's argument.  (*Id.* at pp. 487–488.)  *Warren* involved two defendants and two victims.  Robert Warren, one defendant, ordered the murder victim, Antonio Herrera, to lie down.  (*Id.* at p. 476.)  An unidentified man pulled Homero Flores, the other murder victim, from a car and pushed him down.  (*Id.* at pp. 476–477.)  Woodrow Warren, another defendant, tried unsuccessfully to start Flores's car.  (*Id.* at p. 477.)  When the unidentified person began to search Herrera, Herrera tried to protect his pockets.  Robert asked, "Can I shoot?"

---

[5]  Gray does not dispute and the jury necessarily found the other elements of felony murder as currently defined.  As noted, the jury convicted Gray of first degree murder and the only theory of first degree murder was that a human being was killed in the commission of a burglary or robbery.  The jury also convicted Gray of burglary and robbery.  The special circumstance instruction, which the jury found true, showed that the jury found that Gray "intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in the commission of the murder in the first degree . . . ."

6

and Woodrow replied, "Yes." (*Id*. at p. 477.)  Robert shot Herrera in the head and then shot Flores in the side.  (*Ibid*.)  Flores and Herrera died of the gunshot wounds.  (*Ibid*.)

As relevant here, the jury convicted Robert and Woodrow of two first degree murders, a robbery, and a felony murder robbery special circumstance. (*Warren*, *supra*, 45 Cal.3d at p. 476.)  With respect to the felony murder special circumstance the jury instruction provided that "the defendant was either the actual killer or a person who intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in the commission of murder in the first degree.' " (*Id*. at p. 486.)  As in this case, the trial court also instructed on felony murder as follows:  " 'The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a result of the commission of or attempt to commit the crime of robbery, and where there was in the mind of the perpetrator the specific intent to commit the crime of robbery, is murder of the first degree.' " (*Id*. at p. 487.)

In our high court, Woodrow argued the trial court "failed to inform the jurors that they were required to find that he acted with intent to kill if they determined he was not the actual killer." (*Warren*, *supra*, 45 Cal.3d at p. 487.)  The court indicated that it was required to consider "how would a reasonable juror understand the instruction" and "if necessary, the charge in its entirety." (*Ibid*.)  The court found a "reasonable juror" would understand the special circumstance instruction as requiring intent to kill to be found true.  (*Ibid*.)  The court recognized that based on the language of the felony murder instruction, the special circumstance instruction "might conceivably be understood to mean that a special-circumstance finding could be

7

made as to an aider and abettor if he acted merely with the intent to commit robbery and not with the intent to kill." (*Id*. at pp. 487–488.) The high court, however, concluded that the "instructions here would not be so construed by a reasonable juror." (*Id*. at p. 488.) "A reasonable juror . . . would not undertake such tortuous analysis." (*Ibid*.)

Justice Arguelles, in a concurring opinion signed by two other justices, indicated "there is a serious question whether the instructions satisfactorily informed the jury it must find Woodrow intended to kill before sustaining the two special circumstance allegations against him." (*Warren*, *supra*, 45 Cal.3d at p. 490, italics omitted.) Notwithstanding the concurring opinion (on which Gray relies), our high court has repeatedly reaffirmed *Warren*'s majority holding. (*People v. Pinholster* (1992) 1 Cal.4th 865, 954, overruled on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 458–459.) In *People v. Sanders* (1990) 51 Cal.3d 471, our Supreme Court explained *Warren* held a reasonable juror would understand the special circumstance instruction given in the present case to require that if the defendant was not the actual killer, he "acted with the intent to kill." (*Sanders*, at pp. 516–517.) In *People v. Champion* (1995) 9 Cal. 4th 879, the high court reiterated that it has "repeatedly held that a reasonable juror would construe [the special circumstance instruction given in this case] as imposing a requirement of intent to kill." (*Id*. at p. 929, overruled on other grounds in *People v. Combs* (2004) 34 Cal.4th 821, 860.)

Although *Warren* involved a direct appeal and not a petition for resentencing, the issue in *Warren* is identical to the disputed issue before us—whether the special circumstance instruction as given in Gray's case required the jury to find a

defendant convicted of felony murder who was not the actual killer intended to kill. The *Warren* majority held that the special circumstance instruction required such a finding of intent to kill. Gray contends, "[H]ere there were no facts and no jury instructions to indicate the jury was likely to have understood" the special circumstance instruction "to require the jury to find that Gray intended to kill." Gray's argument misconstrues *Warren*. Our high court did not rely on any specific fact when it concluded that the language of the special circumstance instruction given at Gray's trial required the jury find he intended to kill when it found the special circumstance true. Instead, the *Warren* court looked to the language of the special circumstance instruction, not the particular facts underlying Robert and Woodrow Warren's crimes. Gray's assertion that other jury instructions did not also require a finding that Gray intended to kill does not alter the conclusion that under *Warren,* the jury necessarily found intent to kill when it convicted Gray of the special circumstance.

Gray correctly points out the trial court did not instruct his jury on express malice. Had the jury in *Warren* found express malice, i.e., specific intent to kill, under other instructions, there would have been no issue whether the special circumstance instruction required a finding of intent to kill. The fact that the trial court in this case did not instruct the jury on express malice thus does not assist in answering the key question: Did the special circumstance instruction require the jury find Gray harbored intent to kill when it found the special circumstance true. *Warren* answers that question in the affirmative as to an identical instruction.

9

In *Carlos v. Superior Court* (1983) 35 Cal.3d 131, relied on by Gray, our high court considered "whether a defendant can be charged or convicted of murder with the special circumstance of felony murder under the 1978 death penalty initiative if he did not intend to kill or to aid in the commission of a killing." (*Id.* at p. 134.) The court indicated that the initiative "should be construed to require an intent to kill or to aid in a killing as an element of the felony murder special circumstance." (*Id.* at p. 135.) The court issued a writ barring trial on a special circumstance where no evidence suggested that the defendant intended to kill the victim. (*Id.* at p. 136.) The Supreme Court later overruled *Carlos* explaining "that the broad holding of *Carlos* that intent to kill is an element of the felony-murder special circumstance cannot stand, and that the following narrow holding must be put in its place: intent to kill is not an element of the felony-murder special circumstance; but when the defendant is an aider and abettor rather than the actual killer, intent must be proved before the trier of fact can find the special circumstance to be true." (*People v. Anderson* (1987) 43 Cal.3d 1104, 1138–1139.)[6] Gray's reliance on *Carlos* is misplaced because *Carlos* considered a different issue and does not cast

---

[6] Subsequent to *Anderson*, "the voters adopted Proposition 115, modifying aider-and-abettor liability under the felony-murder special circumstance to provide that 'a person other than the actual killer is subject to the death penalty or life without parole if that person was a major participant in the underlying felony . . . and *either* intended to kill *or* acted with reckless indifference to human life.' [Citations.]" (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 163, fn. 20.)

10

doubt on *Warren*, a subsequent case, or the many Supreme Court cases following *Warren*.

Gray correctly states that the current special circumstance felony murder instruction differs from the one given in his trial.[7]

---

[7] CALJIC No. 8.80.1 currently provides in relevant part: "If you find that a defendant was not the actual killer of a human being, [or if you are unable to decide whether the defendant was the actual killer or [an aider and abettor] [or] [co-conspirator],] you cannot find the special circumstance to be true [as to that defendant] unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill [aided,] [abetted,] [counseled,] [commanded,] [induced,] [solicited,] [requested,] [or] [assisted] any actor in the commission of the murder in the first degree] [.] [, or with reckless indifference to human life and as a major participant, [aided,] [abetted,] [counseled,] [commanded,] [induced,] [solicited,] [requested,] [or] [assisted] in the commission of the crime of (Penal Code, § 190.2(a)(17) crime) which resulted in the death of a human being, namely _____.]

"[In determining whether a defendant as an aider and abettor was a 'major' participant to a first degree felony murder, you must consider the totality of the circumstances surrounding the commission of the crime, including but not limited to the following:

"1. What role, if any, did the defendant have in planning the criminal enterprise that led to [one or more] death[s] of the victim[s]?

"2. What role, if any, did the defendant have in supplying or using lethal weapons?

"3. What awareness, if any, did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?

That assertion does not assist Gray because it does not elucidate the meaning of the instruction given in his case—the issue *Warren* considered. We are required to follow *Warren*. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

We have focused on Gray's intent if he was not the actual killer. The resentencing court found that either Gray was the actual killer or he acted with intent to kill. ~(RT 6)~ Gray does not argue that if he were the actual killer, he would be entitled to resentencing. (*Strong, supra*, 13 Cal.5th at p. 703.) Any such argument would be incorrect because under the current definition of murder, a participant in a robbery or burglary "in which a death occurs is liable for murder" if "[t]he person was the actual killer." (§ 189, subd. (e)(1).) In sum, the resentencing court did

---

"4. Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder?

"5. Did the defendant's actions or inactions play a particular role in the death?

"6. What did the defendant do after lethal force was used?

"No one of these considerations is necessary, nor is any one of them necessarily sufficient. All must be weighed in determining the ultimate question, namely, whether the defendant's involvement in the criminal enterprise was sufficiently significant to be a 'major participant'.]

"[A defendant acts with reckless indifference to human life when that defendant knows or is aware that [his] [her] acts involve a grave risk of death to an innocent human being. By participating in a violent felony with lethal weaponry, one should reasonably foresee that bloodshed is a possibility. However awareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient; only knowingly creating a 'grave risk of death' is sufficient.]"

12

not err in denying Gray's resentencing petition because Gray participated in a robbery and burglary in which a death occurred and was either the actual killer or with intent to kill, aided and abetted the killer.

Finally, we recognize that section 1172.6 provides a procedure for the parties to "waive a resentencing hearing and stipulate that the petitioner is eligible" for resentencing. (§ 1172.6, subd. (d)(2).) However, we reject Gray's argument that the People's concession that it could not establish its burden at the evidentiary hearing should be deemed a stipulation that Gray was eligible for resentencing.[8] Stipulations generally are "agreements between counsel that the facts stipulated to are true." (*People v. Farwell* (2018) 5 Cal.5th 295, 308; *In re Horton* (1991) 54 Cal.3d 82, 94 [stipulation "normally refers to an agreement between attorneys"].) In this case, the prosecutor and defense counsel neither entered an agreement that resentencing was warranted nor waived the evidentiary hearing.[9] Because the prosecutor and defense counsel did not stipulate to resentencing, we need not consider Gray's argument that had the parties so stipulated, the resentencing court would have been required to accept such stipulation.

---

[8] Gray makes this argument in a supplemental brief requested by this court on the following question: "What impact, if any, does the resentencing of Derrick Elliot Gray's codefendant Alvin Bobo and the People's concession in the trial court that Gray is entitled to resentencing have in evaluating Gray's appeal from the denial of his Penal Code section 1172.6 resentencing petition."

[9] Although Gray states that the prosecutor "waived a hearing," the record does not support that assertion.

## DISPOSITION

The order denying Derrick Elliot Gray's Penal Code section 1172.6 resentencing petition is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.

Court of Appeal, Second Appellate District, Division One - No. B330525

**S290716**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

THE PEOPLE, Plaintiff and Respondent,

v.

DERRICK ELLIOT GRAY, Defendant and Appellant.

_____

The petition for review is denied.

Liu and Evans, JJ., are of the opinion the petition should be granted.


(See Dissenting Statement by Justice Evans.)


_____/s/_____
*Chief Justice*

PEOPLE v. GRAY

S290716


Dissenting Statement by Justice Evans


In 1982, Defendant Derrick Elliott Gray was convicted of felony murder with a special circumstance finding that the murder was committed during a felony, in this case, a robbery or burglary. (Pen. Code, § 190.2, subd. (a)(17); subsequent statutory references are to the Penal Code.) According to the factual recitation set forth in the decision on direct appeal, Gray (who was 18 years old at the time of offense) and a codefendant committed a robbery and burglary, during which they bound and gagged the 77-year-old victim, who died from strangulation or suffocation. (*People v. Gray* (Oct. 4, 1983, 2 Crim. No. 42179) [nonpub. opn.] (*Gray I*).) Gray was sentenced to life without the possibility of parole for the murder.

At the time of Gray's trial and conviction, "[f]elony-murder liability [did] not require an intent to kill, or even implied malice, but merely an intent to commit the underlying felony." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654.) With the enactment of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) (Stats. 2018, ch. 1015, § 3), however, the Legislature overhauled the state's murder statutes. (*People v. Emanuel* (2025) 17 Cal.5th 867.) "Pertinent here, Senate Bill No. 1437 significantly narrowed the scope of the felony-murder rule by adding subdivision (e) to Penal Code section 189." (*Id.* at p. 880.) Pursuant to that provision, "[a] participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs is liable for murder only if one of the

following is proven:  [¶] (1) The person was the actual killer.  [¶] (2) The person was not the actual killer, but with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.”  (§ 189, subd. (e).)

Senate Bill No. 1437 also created a procedural mechanism for those previously convicted of murder under a theory amended in the bill to petition for resentencing.  (See § 1172.6; *People v. Curiel* (2023) 15 Cal.5th 433, 449 (*Curiel*).)  A trial court acting on such a petition first must evaluate whether the petitioner has made a prima facie case for relief.  (§ 1172.6, subd. (c).)  “ ‘If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.’ ”  (*Curiel*, at p. 450, citing § 1172.6, subd. (c).)  “ ‘If, instead, the defendant has made a prima facie showing of entitlement to relief, “the court shall issue an order to show cause.” ’ ”  (*Curiel*, at p. 450, quoting § 1172.6, subd. (c).)  At an evidentiary hearing, “the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder” under state law as amended by Senate Bill No. 1437.  (§ 1172.6, subd. (d)(3).)  If the prosecution fails to sustain its burden of proof, the murder conviction “shall be vacated and the petitioner shall be resentenced on the remaining charges.”  (*Ibid.*)

Some 40 years after his conviction, Gray petitioned for resentencing pursuant to section 1172.6.  After the trial court determined that Gray stated a prima facie case for relief and

issued an order to show cause why the petition should not be granted, the People conceded that Gray was entitled to relief. At the evidentiary hearing, the trial court summarily rejected the People's concession and, without prior notice to the parties, sua sponte reconsidered its prima facie finding. Although much of the original trial record had been lost, the court took the view that jury instructions purportedly given at Gray's trial established conclusively that he was ineligible for relief.[1]

Those jury instructions provide that murder "is the unlawful killing of a human being with malice aforethought." The instruction on express malice is struck through. The implied malice instruction states: "Malice is implied when the killing is a direct causal result of the perpetration or the attempt to perpetrate a burglary or robbery." The only theory of murder presented in the instructions is first degree felony murder. Consistent with the law in effect at that time, the instruction imposes liability for a killing, "whether intentional, unintentional or accidental, which occurs as a result of the commission of or attempt to commit the crime of burglary or robbery, and where there was in the mind of the perpetrator the specific intent to commit such crime." Lastly, the felony-murder

---

[1]    Aside from a handful of pages not relevant here, the original trial records have been lost. Attached as exhibit 2 to the "People's Response to Petition for Resentencing Pursuant to Penal Code Section 1172.6" is a set of jury instructions purportedly given in the case. The filing is not accompanied by a declaration, and thus, the provenance of the instructions — which are not separately available as part of either the clerk's or reporter's transcripts — is unknown. The document is file stamped May 17, 1982. The People describe it as "Jury Instructions – Given," although the exhibit itself includes the markings "Given" and "Refused."

special-circumstance instruction states that the jury may return a true finding thereon only if it is proved that Gray "intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in the commission of the murder in the first degree."

The trial court found Gray ineligible for relief based solely on the special circumstance instruction, from which the court concluded that the jury necessarily found "intent to kill." The trial court gave preclusive effect to this purported finding without conducting any issue preclusion analysis. (Cf. *Curiel*, *supra*, 15 Cal.5th 433.) The Court of Appeal affirmed the trial court's order denying Gray's resentencing petition, also without conducting such an analysis. (*People v. Gray* (Sept. 20, 2024, B330525) [nonpub. opn.] (*Gray II*).) The Court of Appeal relied instead on *People v. Warren* (1988) 45 Cal.3d 471, 487 (*Warren*) for the proposition that this version of the special circumstance instruction is not erroneous for failure to require intent to kill. (*Gray II*, B330525.) We granted Gray's petition for review and transferred the case to the Court of Appeal to reconsider in light of *Curiel*. Upon reconsideration, the Court of Appeal concluded that *Curiel* does not compel a different result. (*People v. Gray* (Mar. 25, 2025, B330525) [nonpub. opn.] (*Gray III*).) The Court of Appeal again bypassed an analysis of the state of the law at the time of Gray's trial and conviction, instead invoking *Warren* to conclude that the special circumstance instruction "could only be interpreted to require the jury to find intent to kill." (*Gray III*, B330525.) As explained below, this approach is subject to question.

In *Curiel*, we explained that issue preclusion bars relitigation of issues earlier decided only if several threshold

4

requirements are fulfilled. (*Curiel*, *supra*, 15 Cal.5th at p. 451.) As pertinent here, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; it must have been actually litigated in the former proceeding; and it must have been necessarily decided in the former proceeding. (*Ibid.*) " 'An issue is actually litigated "[w]hen [it] is *properly raised*, by the pleadings or otherwise, and is submitted for determination, and *is determined* . . . ." ' " (*Id.* at p. 452.) "An issue is necessarily decided so long as it was not ' "entirely unnecessary" to the judgment in the initial proceeding.' " (*Ibid.*) The party asserting collateral estoppel bears the burden of establishing these requirements. (*Ibid.*)[2] " 'In considering whether these criteria have been met, courts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts.' " (*Curiel*, at p. 451.)

Here, setting aside any threshold concern that the lower courts did not look carefully at the *entire* record from Gray's trial — because it no longer exists — the special circumstance instruction given at Gray's trial did not expressly require "intent to kill." This is not surprising, given that, at the time of Gray's trial and conviction, the special circumstance *statute* was not thought to require intent to kill. (See *Carlos v. Superior Court* (1983) 35 Cal.3d 131, 139–143, overruled by *People v. Anderson* (1987) 43 Cal.3d 1104 (*Anderson*) [see fn. 1, *post*].) The statute, as rewritten by voters in 1978, specifically eliminated an earlier requirement that a defendant " 'with intent to cause death

---

[2]     Although, in this case, that burden seemingly would have fallen to the trial court after it rejected the People's concession.

physically aided or committed such act or acts causing death.' " (*Carlos,* at p. 139, quoting former § 190.2, subd. (c); see *Carlos*, at pp. 140, 143.) Instead, the voters chose to impose liability where "[t]he murder was committed while the defendant was engaged in, or was an accomplice in, the commission of" an enumerated felony, including robbery and burglary. (§ 190.2, subd. (a)(17), added by initiative, Gen. Elec. (Nov. 7, 1978), eff. Nov. 8, 1978 [commonly known as Prop. 7].) "The absence of any express requirement of intentionality" in this section suggested that the special circumstance applied to a defendant "whether or not he intended to kill." (*Carlos*, at p. 140; see also *People v. Silbertson* (1985) 41 Cal.3d 296, 304 [noting, in a "pre-*Carlos* case, intent to kill seemed irrelevant to both the felony-murder charge and the robbery special circumstance"].) On December 12, 1983, after Gray's trial and conviction — and, indeed, after his direct appeal was decided — this court interpreted subdivision (a)(17) of section 190.2, together with former subdivision (b) of the same section, to conclude that the felony-murder special circumstance requires intent to kill. (*Carlos*, at pp. 142–143, 153–154.) That decision was based, in part, on the (partially erroneous) conclusion that the statute had to be so construed to avoid serious constitutional questions. (*Id.* at pp. 136, 147–153; see *Anderson*, *supra*, 43 Cal.3d at p. 1141 [explaining "one of the bases on which we rested our decision in *Carlos*" proved to be unsound].)[3]

Given the state of the law at the time of Gray's trial and conviction, I question whether the threshold requirements of

---

[3] In *Anderson*, this court overruled "the broad holding of *Carlos* that intent to kill is an element of the felony-murder

issue preclusion are met. The issue of whether Gray acted with intent to kill was not properly raised, by the pleadings or otherwise, because none of the charged crimes or special circumstance required such a finding. If there is any doubt that the felony-murder special circumstance was not thought to require intent to kill when the jury in this case rendered its verdict, such doubt is resolved by the fact that no express malice instruction was given. The jury was never instructed on "intent to kill," and those words appear *nowhere* in the charge.[4]

special circumstance" and replaced it with a narrower holding: "when the defendant is an aider and abetter rather than the actual killer, intent must be proved before the trier of fact can find the special circumstance to be true." (*Anderson*, *supra*, 43 Cal.3d at pp. 1138–1139.) Former subdivision (b) of section 190.2, since redesignated as subdivision (c), now imposes liability for "[e]very person, not the actual killer, who, *with the intent to kill*, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree." (§ 190.2, subd. (c), italics added.) The standard jury instructions have been modified accordingly, expressly requiring "intent to kill." (CALJIC No. 8.80; CALCRIM No. 701.)

[4]     Gray noted below that the trial court did not instruct his jury on express malice. (See *Gray III*, *supra*, B330525.) The Court of Appeal observed that this does not assist in answering the "key question," i.e., whether the special circumstance instruction required a finding of intent to kill, a matter on which it found *Warren*, *supra*, 45 Cal.3d at page 488 conclusive. (*Gray III*, *supra*, B330525.) The Court of Appeal observed that, "[h]ad the jury in *Warren* found express malice, i.e., specific intent to kill, then it would not have been necessary to decide whether the special circumstance instruction required a finding of intent to kill." (*Ibid*.) This confuses two distinct questions: (1) whether the jury's verdict in *Warren* necessarily reflected a finding of express malice, as opposed to reliance on some alternative theory

However a reasonable jury might understand the special circumstance instruction under different circumstances (see *post*, discussing *Warren, supra*, 45 Cal.3d at p. 488), it is difficult to conclude that the jury *in this case* would have thought a finding of intent to kill was required or that it necessarily made such a finding. It is indeed difficult to reach such a conclusion, given that nobody else in the room — not the presiding judge, the prosecutor, or the defense attorney — likely would have shared the view that a finding of intent to kill was required under the law in effect at that time. Accordingly, the issue of intent to kill was not " ' "actually litigated" ' " or " ' "necessarily decided." ' " (*Curiel, supra*, 15 Cal.5th at pp. 451, 452.) Rather, it was "entirely unnecessary" to the judgment. (*Ibid.*)

Even where the threshold requirements of issue preclusion are satisfied, " ' "the doctrine will not be applied if such application would not serve its underlying fundamental principles" of promoting efficiency while ensuring fairness to the parties.' " (*Curiel, supra*, 15 Cal.5th at p. 454.) We recognized one well-settled exception to the general rule of issue preclusion in *People v. Strong* (2022) 13 Cal.5th 698, 716, that is, "when there has been a significant change in the law since the factual findings were rendered that warrants reexamination of the issue." (Cf. *Curiel*, at p. 455 [noting the "intent to kill finding that was required at the time of Curiel's trial was governed by the same standards that exist today"].) Although the concept of express malice has not undergone a significant reformation,

---

of guilt; and (2) whether the jury in *Warren* was instructed on express malice *at all*. I agree with Gray that the complete absence of an express malice instruction in this case is informative.

8

intent to kill simply was not required for a true finding on the felony-murder special circumstance at the time of Gray's trial and conviction. It is therefore doubtful that Gray had either the opportunity or incentive to litigate the issue of intent to kill, which was likewise *not* required for his underlying felony-murder conviction. (Cf. *Id.* at p. 459 [noting that Curiel "had more than adequate incentive to litigate his intent to kill" because, even setting aside the consequences of the special circumstance, "it was an element of the crime of murder" under one of the theories pursued by the prosecution].)

As stated above, the Court of Appeal did not conduct a comprehensive issue preclusion analysis, relying instead on *Warren*, another case decided years after Gray's trial and conviction. Our task in *Warren* was to consider how a reasonable juror would understand the special circumstance instruction given in that case and, "if necessary, the charge in its entirety." (*Warren*, *supra*, 45 Cal.3d at p. 487.) The *Warren* majority recognized that the language of the special circumstance instruction, considered together with the felony-murder instruction, "might conceivably be understood to mean that a special-circumstance finding could be made as to an aider and abetter if he acted merely with the intent to commit robbery and not with the intent to kill." (*Id.* at pp. 487–488.) The majority nonetheless held that a reasonable juror would construe the instruction to require intent to kill. (*Ibid.*) A three-justice concurrence noted that there was a "serious question whether the instructions satisfactorily informed the jury" that it had to find an aider and abettor intended to kill before sustaining the special circumstance allegation. (*Id.* at p. 490 (conc. opn. of Arguelles, J.).) The concurrence found it

9

unnecessary to resolve that question, however, because even assuming the instructions were inadequate, the error was not prejudicial. (*Ibid.* [noting that the defendant answered in the affirmative when his coparticipant asked, " 'Can I shoot?' "].)

As noted by Gray, *Warren* raised a claim of instructional error, asking whether a reasonable jury would have understood the instructions given in that case to require intent to kill. Contrary to the Court of Appeal's assertion (*Gray III*, *supra*, B330525 ["the issue in *Warren* is identical to the issue before us"]), *Warren* did not decide the issue relevant here — whether Gray's jury *necessarily* found that he acted with intent to kill. (*Curiel*, *supra*, 15 Cal.5th at p. 467 [in order to find an element satisfied at the prima facie stage of §1172.6 proceedings, "we must be confident the jury *necessarily* found" that element].) Bare reliance on *Warren* is therefore misguided, as it overlooks whether intent to kill was required by law at the time of Gray's trial and conviction. (See *People v. Antonelli* (2025) 17 Cal.5th 719, 730–731 [the defendant was not categorically ineligible for relief under § 1172.6 because the law in effect at the time of his trial and conviction did not require proof that he personally harbor malice].) Eligibility for relief under section 1172.6 generally "will turn on an examination of both the governing law at the time of trial and the record of conviction, including the jury instructions." (*Antonelli*, at p. 731.) The Court of Appeal dismissed Gray's reliance on *Carlos*, suggesting it was "misplaced" because *Carlos* "does not cast doubt on *Warren*, a subsequent case." (*Gray III*, B330525.) But *Carlos* imposed the requirement of intent to kill only *after* Gray's trial and conviction. Thus, it should be central to the issue preclusion analysis. (See *Antonelli*, at pp. 727–731; *id.* at p. 729

[identifying *People v. Concha* (2009) 47 Cal.4th 653, which first held that provocative act murder requires a finding that the defendant personally harbored malice, as "the relevant turning point" in the law].)

Because the law frequently undergoes revision, I urge lower courts to conduct a considered issue preclusion analysis before concluding that a defendant is ineligible for relief under section 1172.6 based on jury findings rendered decades ago. In my view, the failure to do so in this case constitutes a miscarriage of justice. Gray was 18 years old at the time of the offense and sentenced to life without the possibility of parole for a murder that, according to the facts laid out in the decision on direct appeal, could have been unintentional. (*Gray I*, *supra*, 2 Crim. No. 42179.) In view of the foregoing, I would grant review of this matter, notwithstanding that there is no published conflict on the issue. I note that our denial of review does not necessarily preclude other forms of relief, including recall and resentencing upon the recommendation of the district attorney (§ 1172.1), or pursuant to a commutation recommendation (§ 4801, subd. (a) ["The Board of Parole Hearings may report to the Governor, from time to time, the names of any and all persons imprisoned in any state prison who, in its judgment, ought to have a commutation of sentence or be pardoned and set at liberty on account of good conduct, or unusual term of sentence, or any other cause"]).

EVANS, J.

**I Concur:**

**LIU, J.**

11